UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-00090-TBR

KENT BROWN and ERIC ZELLER                                         PLAINTIFFS

v.

STUDENT LOAN XPRESS, INC., *et al*.                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss by Defendant Student Loan Xpress, Inc. Def.'s Mot. Dismiss, Docket Number ("DN") 22. The Plaintiffs have responded. Pls.' Resp., DN 23. The time for filing a reply has passed, and this matter is now ripe for adjudication. For the following reasons, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The Plaintiffs, Kent Brown and Eric Zeller ("Plaintiffs"), were students at the American Justice School of Law ("AJSL") formerly located in Paducah, Kentucky. AJSL opened in the fall of 2005, was eventually denied accreditation by the American Bar Association, and ultimately closed in December of 2008.[1] The Plaintiffs enrolled at AJSL in the spring of 2007, and obtained private student loans from Defendant Student Loan Xpress, Inc. ("SLX"), to finance their educations.

AJSL and its Dean, Defendant Paul Hendrick ("Hendrick"), allegedly told the Plaintiffs that private student loans could only be obtained from SLX. The Plaintiffs contend that SLX's exclusive lender status was the result of a January 2006 "pay for play" agreement between

---

[1] AJSL, a for-profit law school, was the subject of a series of legal challenges by its shareholders and certain students in March of 2008. These challenges resulted in a transfer of ownership and a change of name to the Barkley School of Law. A detailed history of the school's past is unnecessary for the present motion, and, for the purposes of clarity and efficiency, the Court refers to the school only as AJSL.

Hendrick and SLX, whereby Hendrick received financial compensation in return for making SLX the only lender available to AJSL students.  As part of this agreement it is alleged that AJSL was prohibited from registering with a national database or with other lending institutions, which would have authorized other lenders to make loans to AJSL students.  The Plaintiffs, separately and on different occasions, attempted to obtain private loans from US Bank but were denied funds, allegedly because of the restrictions imposed on AJSL by the "pay for play" agreement.  In all, the Plaintiffs claim that SLX and Hendrick financially enriched themselves by making SLX the sole source of AJSL student loans.  They assert that the Defendants' actions harmed competition in and were an attempt to monopolize the market for private student loans in the western Kentucky region, which violated federal and state antitrust laws.

In addition to antitrust violations, the Plaintiffs claim that the Defendants committed two violations of the Kentucky Consumer Protection Act ("KCPA").  First, the terms governing repayment of their loans were  allegedly misrepresented to the Plaintiffs.  Marketing materials and oral statements by Hendrick and SLX led the Plaintiffs to believe that repayment of their student loans would be deferred while they were in school and for nine months after graduation.  Instead, terms in the master promissory notes ("MPNs") signed by the Plaintiffs stated that repayment would be deferred for no more than thirty-three months from the date of disbursement.  This caused repayment to begin prior to graduation.  Plaintiff Brown claims that he was forced to make payments "with no other option" beginning only two months after initial disbursement, and Plaintiff Zeller makes similar claims concerning his loans.  Second, the Plaintiffs claim SLX violated the KCPA because its loans did not contain the language of the Federal Trade Commission's "Holder Rule" found in 16 C.F.R. § 433.2.

The Plaintiffs also allege that the Defendants reaped financial benefits by participating in

a civil conspiracy to violate Kentucky's consumer protection laws. Hendrick is accused of coaching AJSL's secretaries and staff to orally misrepresent the terms of the SLX loans and to conceal the true nature of the agreements. SLX allegedly acted in concert with Hendrick and encouraged this conduct, which ultimately damaged the Plaintiffs.

Finally, the Plaintiffs maintain that they had no notice of the Defendants' wrongful actions because such actions were fraudulently concealed. The Plaintiffs only received notice of the Defendants' alleged deception on September 23, 2010, when the Kentucky Attorney General entered into an Assurance of Voluntary Compliance with SLX regarding the company's practices. Because they had no notice and could not have discovered the Defendants' wrongful acts through the use of reasonable due diligence, the Plaintiffs claim that the Defendants fraudulently concealed their acts in order to increase the number of student loans issued to AJSL students, thereby financially enriching themselves in violation of the antitrust and consumer protection laws.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may attack at complaint for failing to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). When considering a Rule 12(b)(6) motion to dismiss, the court will presume all of the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*,

3

829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitations of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged - but has not 'show[n]' - 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

## DISCUSSION

SLX moves to dismiss each of the Plaintiffs' causes of action pursuant to Rule 12(b)(6). The Court will first address the antitrust claims and then turn to the consumer protection and civil conspiracy claims.

### A. Federal and State Antitrust Laws.

The Plaintiffs' amended complaint alleges that the Defendants violated the federal and state antitrust laws. Specifically, the Plaintiffs claim that SLX violated Section 1 of the Sherman Act, 15 U.S.C. § 1, Section 2 of the Sherman Act, 15 U.S.C. § 2, Section 3 of the Clayton Act,

4

15 U.S.C. § 14, and Kentucky's antitrust statute, KRS § 367.175.  Violation of the federal antitrust statutes is actionable in federal district court pursuant to 15 U.S.C. § 15.  The alleged violations of these statutes arose out of a common set of facts, mainly that in or around January of 2006, SLX and Hendrick entered into a "pay for play" agreement whereby SLX compensated Hendrick for making SLX the exclusive provider of private loans to AJSL students.  The Court will address each of these causes of action in turn.[2]

### 1. Illegal Restraint on Trade - 15 U.S.C § 1.

The Plaintiffs allege that Hendrick and SLX "engaged in a continuing contract, combination and conspiracy, among themselves with the primary objective to unreasonably restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1[.]"  Am. Compl., DN 18, ¶ 35.  Section 1 provides, in pertinent part, that "[e]very contract, combination . . . , or conspiracy, in restraint of trade or commerce among the several States . . . is hereby declared to be illegal."  15 U.S.C. § 1.  If interpreted literally, Section 1 would prohibit *every* agreement that restrains trade.  It has been recognized, however, that "Congress could not have intended a literal interpretation of the word 'every[.]'"  *Arizona v. Maricopa Cnty Med. Soc'y*, 457 U.S. 332, 342 (1982).  Instead, Section 1 prohibits a small category of agreements that have been found to be *per se* illegal, and courts analyze all other alleged restraints on trade under the "rule of reason," which as its name suggests, "requires the factfinder to decide whether under all circumstances of the case the restrictive practice imposes an unreasonable restraint on competition."  *Id.*

As an initial matter, the Court finds that the Defendants' alleged actions are not *per se* illegal in the antitrust context.  *Per se* violations arise from "'[a]greements or practices which

---

[2] Federal courts analyze alleged violations of Kentucky's antitrust statutes using the same principles applicable to violations of Sections 1 and 2 of the Sherman Act.  *See Borg-Warner Protective Servs. Corp. v. Guardsmark, Inc.*, 946 F. Supp. 495, 500 n.5 (E.D. Ky. 1996), *aff'd* 156 F.3d 1228 (6th Cir. 1998).  If the federal antitrust claims warrant dismissal in this particular case, the state violations must also be dismissed.

because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.'" *Foundation for Interior Design Educ. Research v. Svannah Coll. of Arts & Design*, 244 F.3d 521, 529 (6th Cir. 2001) (quoting *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958)). Instead of a *per se* violation, the Defendants' alleged actions are best described as a "vertical restraint on trade," that is, not a horizontal agreement between competitors, but a "combination[] of persons at different levels of the market structure, such as manufacturers and distributors." *Bailey's, Inc. v. Windsor Am., Inc.*, 948 F.2d 1018, 1027 (6th Cir. 2001) (citation omitted). "Vertical restraints on trade are examined under a rule of reason analysis unless they include some agreement on price or price levels." *Ezzo's Invs., Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980, 987 (6th Cir. 2001). The Plaintiffs have not asserted a claim of price fixing by the Defendants. The alleged vertical restraint is not *per se* illegal and is therefore subject to examination under the rule of reason.

In order to show that a vertical restraint on trade violates the rule of reason and Section 1 of the Sherman Act, a plaintiff must prove:

> (1) that the antitrust defendant contracted, combined, or conspired; (2) that the combination or conspiracy produced adverse anticompetitive effects (3) within relevant product and geographical markets; (4) that the objects of and conduct pursuant to that contract or conspiracy were illegal; and (5) that the plaintiff was injured as a proximate result of that conspiracy.

*International Logistics Grp., Ltd. v. Chrysler Corp.*, 884 F.2d 904, 907 (6th Cir. 1989) (citing *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 f.2d 802, 805 (6th Cir. 1988)).

Presuming that the Plaintiffs' factual allegations are true, the Court finds that they have alleged sufficient facts to make a violation of Section 1 plausible on its face. Even though the Plaintiffs have presented limited evidence on the issue, their allegations make it plausible that the

Defendants conspired to reduce or eliminate competition for private student-loans in western Kentucky and at AJLS.  Taking the Plaintiffs' allegations as true, a "pay for play" agreement between SLX and Hendrick prevented AJSL from registering with other private student loan lenders.   Accordingly an antitrust injury plausibly exists because competition for those loans would effectively be eliminated by this alleged agreement.  Presuming that the allegations in the complaint are true, the Court finds that the Plaintiffs have alleged facts making it plausible that that "(1) the alleged violation tends to reduce competition in some market and (2) that the plaintiff's injury would result from a decrease in that competition rather than from some other consequence of the Defendant's action." *Tennessean Truckstop, Inc. v. NTS, Inc.*, 875 f.2d 86, 88 (6th Cir. 1989) (citation omitted).

This is not to say, however, that the Plaintiffs have presented sufficient evidence to ultimately recover on their Section 1 claim.  The Court simply finds that their presumptively true allegations make a violation of Section 1 plausible.  Discovery is necessary to determine the nature of any agreement between the Defendants and whether the Plaintiffs were denied student loans from other institutions because of that agreement or for reasons not yet before the Court.  As such, the Plaintiffs' Section 1 claim will not be dismissed.

**2.   Monopolization - 15 U.S.C. § 2.**

In addition to a violation of Section 1 of the Sherman Act, the Plaintiffs allege that the Defendants' exclusive agreement "would and did create a monopoly for private student loans for a 'for-profit' law school uniquely placed in western Kentucky." Am. Compl., DN 18, ¶ 44.  By creating a monopoly for student loans at AJSL, the Plaintiffs claim that the Defendants violated Section 2 of the Sherman Act, 15 U.S.C. § 2.

To prove a Section 2 claim, a plaintiff must show: "(1) the possession of monopoly

power in a relevant market; and (2) the willful acquisition, maintenance, or use of that power by anti-competitive or exclusionary means as opposed to 'growth or development resulting from a superior product, business acumen, or historic accident.'" *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002) (quoting *Aspen Skiing Co. v. Aspen Highland Skiing Corp.*, 472 U.S. 585, 595-96 (1985)).

The first element of a Section 2 claim - the possession of a monopoly in a relevant market - can be shown in two ways. A plaintiff may present "direct evidence 'showing the exercise of actual control over prices or the actual exclusion of competitors.'" *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1016 (6th Cir. 1999) (quoting *Byars v. Bluff City New Co.*, 609 F.2d 843, 850 (6th Cir. 1979)). Or, a plaintiff may present "circumstantial evidence of monopoly power by showing a high market share within a defined market." *Id.* (citations omitted). The Plaintiffs have alleged sufficient facts to make a violation of the first element of a Section 2 claim plausible. Specifically, they allege an exclusive agreement made SLX the only provider of student loans at AJSL and that they tried to obtain but were denied loans from other private lenders like US Bank. For the present motion, the Court finds these allegations make it plausible that the Defendants created a monopoly through a "high market share" of private student loans in the "defined market" of western Kentucky.

Under the second element of a Section 2 claim a court must determine whether a defendant willfully acquired monopoly power through anti-competitive or exclusionary means. "In determining whether conduct may be characterized as exclusionary, 'it is relevant to consider its impact on consumers and whether it has impaired competition in an unnecessarily restrictive way." *Conwood*, 290 F.3d at 783 (quoting *Aspen Skiing*, 472 U.S. at 605). A firm's conduct will only be considered exclusionary "[i]f [it] has been attempting to exclude rivals on some

8

basis other than efficiency . . . ." *Aspen Skiing*, 472 U.S. at 605.  The Plaintiffs have alleged this very thing, that an agreement between the Defendants prevented AJSL from registering with other private student loan lenders, thereby excluding them on some basis other than efficiency.

At this juncture, the Court finds that finds that the Plaintiffs have alleged sufficient facts to make their claim of monopolization plausible.  Again, however, the Court acknowledges that discovery is necessary to determine the exact nature of the Defendants' actions, whether a monopoly existed, and whether it was acquired on some basis other than efficiency.  Only by presenting further proof of these items will the Plaintiffs ultimately prevail on their Section 2 claim.

    **3. Exclusive Dealing - 15 U.S.C § 14.**

Under the final antitrust cause of action, the Plaintiffs claim that the Defendants violated Section 3 of the Clayton Act, 15 U.S.C. § 14.  That statue provides, in pertinent part:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies or other commodities . . . or fix a price charged therefore, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

15 U.S.C. § 14.  The Plaintiffs' reliance on Section 3 of the Clayton Act is misplaced in this case, however, because they have failed to state a claim that is cognizable under the statute.

The terms of Section 3 exclusively concern a "sale of goods, wares, merchandise, machinery, supplies or other commodities . . . ."  Money, and more specifically, private student loans, do not fall within the terms of the statute.  *See Wendkos v. ABC Consol. Corp.*, 379 F. Supp. 15, 18 (E.D. Pa. 1974) ("[T]he term 'commodities' for Clayton § 3 purposes does not

9

include money in the form of loans."); *United States v. Investors Diversified Servs., Inc.*, 102 F. Supp. 645, 648 (D. Minn. 1951) ("Money . . . is not a commodity, goods, ware, merchandise, machinery, or supply within the meaning of Section 3 of the Clayton Act.").

> Section 3 [of the Clayton Act] prohibits discrimination only in the lease or sale of "commodities." The language of the Act indicates that "commodity" means tangible, physical, movable articles of commerce. It uses the word "commodities" almost interchangeably with words such as "goods," "wares," or "merchandise." The rule of *ejusdem generis* requires that the meaning of "commodities" be confined to articles of the same kind, class, and character as those specifically enumerated.

*Bartleys Town & Country Shops, Inc. v. Dillingham Corp.*, 530 F. Supp. 499, 513 (D. Haw. 1982). Because "money" is not a "commodity" within the terms of the statute, the Plaintiffs have failed to state a cognizable claim under Section 3 of the Clayton Act. As such, this claim fails as a matter of law and will be dismissed.

### 4. Statute of Limitations and Fraudulent Concealment.

SLX claims that regardless of whether its actions violated the federal and state antitrust laws, the Plaintiffs claims must fail because they are barred by the statute of limitations. The Court disagrees.

The statute of limitations for federal antitrust actions is four years from the accrual of the action. 15 U.S.C. § 15b. A cause of action accrues when a defendant commits an act that injures the plaintiff. *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1020 (6th Cir. 1999). That being said, the defendant's act must be *overt* in order to trigger the running of the statute of limitations. *See Peck v. Gen. Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990) ("For statute of limitations purposes, therefore, the focus in on the timing of the causes of injury, i.e., the defendant's overt acts, as opposed to the effects of the avert acts." (citation omitted)). If the overt act is fraudulently concealed, however, the statute of limitations will be tolled. *See Norton-*

*Children's Hosp., Inc. v. James E. Smith & Sons, Inc.*, 658 F.2d 440, 443 (6th Cir. 1981) ("The general rule is well established in antitrust cases that fraudulent concealment will toll the statute of limitations."). In order to prove that the statute of limitations has been tolled by a defendant's fraudulent concealment, a plaintiff must prove: "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) (citing *Weinberger v. Retail Credit Co.*, 498 F.2d 552 (4th Cir. 1974)).

In the present case, the Court finds that the Plaintiffs have plead sufficient facts to toll the four-year, antitrust statute of limitations. The core of the Plaintiffs' antitrust claim is that "Defendants SLX and Hendrick entered into a 'pay for play' agreement [on] or before January 2006, wherein Hendrick received financial compensation in return for providing SLX the exclusive right to engage in facilitating private student loans to AJSL students." Am. Compl., DN 18, ¶ 17. Entering into this exclusive agreement constitutes the overt act for the purposes of the antitrust statutes, and absent fraudulent concealment of this agreement, the Plaintiffs claims would be barred by the statute of limitations in 15 U.S.C. § 15b. The Plaintiffs have, however, sufficiently pled that the Defendants wrongfully concealed their actions, that the Plaintiffs did not discover the wrongful acts within the limitations period, and they had no knowledge of the allegedly wrongful acts until SLX entered into the "Assurance of Voluntary Compliance" with the Attorney General of Kentucky on September 23, 2010. Accordingly, at this state of the litigation the alleged violations of Sections 1 and 2 of the Sherman Act will not be barred by the antitrust statute of limitations found in 15 U.S.C. § 15b.

### B. Unfair, False, Misleading, or Deceptive Practices in Violation of the KCPA.

The Plaintiffs claim that the Defendants have violated the Kentucky Consumer Protection Act ("KCPA"). Under the KCPA, "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are . . . declared unlawful." KRS § 367.170. "Any person who purchases or leases goods or services primarily for personal, family or household use and thereby suffers any ascertainable loss of money or property," as a result of a practice declared unlawful by KRS § 367.170, has a private right of action to recover damages. KRS § 367.220(1). Other courts in this district, anticipating the Kentucky Supreme Court's answer on the issue, have determined that the extension of credit is a "service" under the terms of KRS § 367.220(1). *See Stafford v. Cross Country Bank*, 3:01-CV-534-H, 2003 U.S. Dist. LEXIS 8215, at *40-44 (W.D. Ky. May 9, 2003) ("[T]he KCPA covers the sale of credit."). The Plaintiffs claim that the practices employed by the Defendants violated KRS § 367.170 in two ways. First, the Plaintiffs were misled by SLX's marketing materials, which contained repayment terms that differed from the terms included in the MPNs. Second, SLX violated the KCPA by failing to include the language of the FTC "Holder Rule" in the MPNs. The Court addresses each of these arguments in turn.

### 1. Misrepresentation of the Terms of Repayment.

The Plaintiffs allege they were misled by SLX's marking materials that included repayment terms which differed from those in the MPNs. According to the Plaintiffs, they would not have signed the MPNs had they not been misled by the marketing materials.

As part of their amended complaint, the Plaintiffs attached the marketing materials they received from SLX. DN 18-1; DN 18-2. In at least four different places these materials state that there will be "no payments until after you leave school" or that the there is a "grace period"

of "9 months after leaving school with a deferred repayment option." DN 18-1, p. 2; DN 18-2, pp. 1-3. Contrary to the terms of the marketing materials, the MPNs signed by the Plaintiffs state that any deferment period will begin "on the initial Disbursement Date and end[] on the date which is nine months after I graduate, or nine months after I cease to be enrolled at an eligible school, but not longer than 33 months." DN 22-2, p. 2; DN 22-3, p. 2; DN 22-4, p. 2; DN 22-5, p. 2.[3] Thus, the marketing materials state that repayment can be deferred up to 9 months after graduation, while the MPNs state that repayment will not be deferred more than 33 months. Given that formal legal education typically requires six academic semesters of study (excluding summer), the terms of the MPNs would require the Plaintiffs to begin repayment of any SLX loans received in the first semester during their last semester of school, not 9 months after graduation.

By highlighting the differences between SLX's marketing materials and the terms of the MPNs, the Plaintiffs have shown that a violation of KRS 367.170 is plausible in this case. In Kentucky, "the words 'unfair, false, misleading, or deceptive [as included in KRS § 367.170]' are 'defined in terms generally understood and perceived by the public.'" *Corder v. Ford Motor Co.*, 285 Fed. Appx. 226, 227-28 (6th Cir. 2008) (quoting *Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 131 (Ky. App. 1998)). In reviewing the exhibits, the Court found only one reference to the 33 month deferment period in the marketing materials, which appears to be contradicted in the same documents by references to the 9-months-after-graduation grace period.

---

[3] In their motion to dismiss, SLX attached the promissory notes signed and executed by the Plaintiffs. The promissory notes, not the marking materials, indicate that repayment of the loans must begin no more than 33 months from the date of initial disbursement. SLX's inclusion of the promissory notes did not convert their motion to dismiss into a motion for summary judgment because SLX merely attached documents previously referred to, but not included with, the Plaintiffs amended complaint. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.") (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 504 (6th Cir. 2001)).

*See* DN 18-2.  Furthermore, the "small print" in the promissory notes makes clear that repayment will be deferred no more than 33 months.  This appears to be different than the representations made in the marketing materials and is plausibly misleading.

The plausibly misleading differences between SLX's marketing materials and the MPNs do not automatically entitle the Plaintiffs to relief, however.  The express terms of KRS § 367.220 require that a misleading practice must be the cause of an "ascertainable loss of money or property."  *See Schlenk v. Ford Motor Credit Co.*, 308 F.3d 619, 622 (6th Cir. 2002) (dismissing plaintiff's KPCA claims for failure to show an "ascertainable loss" resulted from defendant's misleading or deceptive acts).  Citing portions of the Plaintiffs' exhibits and attaching documents of its own to the motion to dismiss, SLX claims that the Plaintiffs have failed to show an ascertainable loss of money.  Although SLX's arguments carry some weight, the Court finds that discovery is necessary to clarify the issue of damages.  The Plaintiffs have put forth a plausible claim for misleading and deceptive practices under KRS 367.170, and discovery on the issue will better reveal the nature of their damages, if any, arising from those practices.

Finally, SLX also argues that the Plaintiffs KCPA claims are barred by two-year statute of limitations in KRS § 367.220(5).  SLX's argument is without merit, however, because it ignores the full terms of the statute.  "Any person bringing an action under this section must bring such action within one (1) year after any action of the Attorney General has been terminated or within two (2) years after the violation of KRS 367.170, whichever is later."  KRS § 367.220(5).  Kentucky Attorney General entered into an Assurance of Voluntary Compliance with SLX on September 23, 2010.  The Plaintiffs first complaint was filed on May 27, 2011. Am. Compl. DN 1.  Accordingly, the Plaintiffs are not barred by the statute of limitations

because they filed their action within one year of the termination of an action by Kentucky's Attorney General.

### 2. The KCPA and the Federal Trade Commission "Holder Rule."

The Plaintiffs also allege that SLX's failure to include the language of the Federal Trade Commission "Holder Rule" in the promissory notes was a misleading or deceptive, in violation of the KCPA. The language of the Holder Rule is contained in 16 C.F.R. § 433.2 and generally makes any assignee of a consumer sales contract liable for claims and defenses that could be asserted against the seller of the assigned contract. In their response to SLX's motion to dismiss, the Plaintiffs concede that the Holder Rule does not, itself, create a private right of action. Instead, the Plaintiffs argue that failure to include the language of the Holder Rule in the promissory notes was an "unfair, false, misleading, or deceptive act" within terms of the KRS § 367.170. Without pointing to any Kentucky-specific case law on the issue, the Plaintiffs claim that "this Court has a clean slate on which to articulate the responsibility of lenders doing business with Kentucky consumers to comply with the Holder Rule . . . ." DN 23, pp. 17-18. The Court has conducted its own review of the KCPA statutes and Kentucky case law and can find no Kentucky authority supporting the Plaintiffs' position. The Court declines the invitation to read into the KCPA any causes of action not articulated by Kentucky's legislature or previously found in the statute by Kentucky's courts. The Court takes no position as to whether failure to include the language of the Holder Rule in the promissory notes was a misleading or deceptive practice within the terms of the KCPA. Because the Plaintiffs can point to no situation in which failure to include the Holder Rule was a violation of the KCPA, the Court declines to do so in this case, and this claim will be dismissed.

### C. Civil Conspiracy.

As their final cause of action, the Plaintiffs allege that the Defendants conspired to violate the KCPA by misrepresenting the terms of SLX's loans. In Kentucky, civil conspiracy "has been defined as 'a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *People Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 261 (Ky. App. 2008) (quoting *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321, 325 (Ky. 1936)). To prevail under a civil conspiracy claim, "the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Id.* (citing *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995)). These definitions make clear that the elements of a civil conspiracy are: 1) an agreement or combination, 2) that is unlawful or corrupt, 3) entered into by two or more persons, 4) for the purpose of accomplishing an unlawful goal.

As shown above, the Plaintiffs have made a plausible claim for violation of Kentucky's Consumer Protection Act, and the Court found that discovery is appropriate in order to ascertain the nature of the Plaintiffs' damages, if any, under that claim. Because the underlying KCPA will not be dismissed, the Court finds that it is also plausible that the SLX and Hendrick conspired to violate the KCPA. This claim will not be dismissed and is not barred by the statute of limitations in KRS § 413.140(1)(c) because, at this stage, it is plausible that such conspiracy was fraudulently concealed until the Plaintiffs became aware of it on September 23, 2010. Discovery on the issue of the civil conspiracy is necessary to determine the nature of the agreement between the Defendants, if any, and whether their actions were unlawful.

### CONCLUSION

For the foregoing reasons, the Motion to Dismiss by Defendant Student Loan Xpress, Inc.

is **GRANTED IN PART** and **DENIED IN PART**.  The Plaintiffs claims for violation of Section 3 of the Clayton Act, 15 U.S.C. § 14, and the FTC "Holder Rule" are **DISMISSED**.  The Plaintiffs' other causes of action remain.  **IT IS SO ORDERED.**